Basil N. and Ruth M. Proctor *v.* Vanessa Hufnail et al.

November Term, 1940.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and Jeffords, JJ.

Opinion filed December 5, 1940.

366

*Lee S. Tillotson* for petitioners.

*Ernest E. Moore* and *Fred E. Gleason* for the petitionees.

STURTEVANT, J. The petitioners, Basil N. Proctor and Ruth M. Proctor, are here seeking a writ of mandamus commanding the defendants, the board of school directors for the town of Reading, to furnish facilities for the transportation of their son Robert between his home and the school at Felchville in said town ''equal with the facilities which are furnished other students of said school resident in the same vicinity.'' They also ask that said school board be ordered to pay to them reasonable and equitable compensation for such transportation as they have already furnished their said son between his home and said school.

From the findings the following facts appear.

The petitioners own a farm in said town located by road one and one-half miles westerly from Bailey's Mills at the end of a dead end highway. The distance from this farm to Bailey's

Mills through the fields is about one mile. Petitioners have resided on this farm since May, 1937. Their son Robert is a normal boy twelve years of age and in good health. The first two years they lived at their present home Robert attended the school at Bailey's Mills, hereinafter referred to as the "old school." He did not attend here during the school year of 1939-40 but received home instruction from his mother. The town furnished no transportation to Robert while he attended the old school. At the beginning of the current school year the old school was discontinued and pupils in this vicinity were required to attend the school at Felchville, hereinafter referred to as the "new school."

About ten years ago the school directors of the town laid out a school bus route. While the driver of this route resides at Bailey's Mills and so starts from there, the route proper begins at a highway intersection about one mile northeasterly from Bailey's Mills, thence in a general northerly direction about one and one-half miles, thence southwesterly about one-third mile, thence southerly and southeasterly about one and one-half miles to the place of beginning, thence southwesterly about one mile to Bailey's Mills. This route is now and since it was laid out has been in use each school year. At the beginning of the present school year it was extended from Bailey's Mills to Felchville, a distance of about four and one-half miles. From the point of starting until the bus reaches Bailey's Mills the only pupils picked up are the Rowley children who live about two miles from where the old school was located. One of these is a six-year-old girl and the other is her brother about thirteen years of age. The bus now transports twelve children to the new school and all of these are picked up and discharged at their homes excepting the two Gibson children, two girls of the ages of six and nine years who walk about one-fourth mile from their home to get the bus connection. The petitioners have refused the offer of the school directors to furnish transportation for Robert from Bailey's Mills to the new school and return, and have been transporting him from his home to and from the new school. This has been done under no contract or agreement with the school board. The school board have refused and now refuse to furnish transportation to Robert other than that offered as above

stated because they are of the opinion that the partial transportation offered is all that is reasonable and necessary to enable him to attend the Felchville school. The bus connection now offered to Robert is practically in the same location as the old school which he attended three years ago. The opinion of the board of school directors that the partial transportation offered to Robert is all that is reasonable and necessary to enable him to attend the new school was formed by the school board in the exercise of their sound discretion, reasoning and best judgment. No reason appears from the evidence why Robert could not wait mornings for the bus at the home of some one of his playmates at Bailey's Mills and his mother, one of the petitioners, knows of no reason why he could not do this. If the bus route had its beginning at Bailey's Mills and from there extended directly to Felchville the Rowley children would have to travel about two miles to get the school bus.

During argument defendants conceded that one Hall has the contract for transporting the scholars on said route and he receives $3.50 per day as compensation therefor. He is to transport all children on the route including those who come from their homes to some point on the route to make the bus connection. His pay does not depend upon the number of children transported. Hall is in partnership with the defendant Hufnail in running the Hufnail farm and what he receives from the town for transporting scholars goes into the partnership fund and is used for general partnership expenses.

P. L. 4268 provides that: ''The board of school directors shall have control of and regulate the transportation and board of pupils in the schools under its charge as hereinafter provided, and contracts therefor shall be made by it.''

P. L. 4269 as amended by sec. 6 of No. 89 of the Acts of 1935 is as follows: ''Each legal pupil as defined in section 4242 entitled or required to attend an elementary school, or required to pursue the first two years of the junior-senior high school course, may be furnished with such total or partial transportation to such school, or board, as is in the opinion of the board of school directors reasonable and necessary to enable him to attend such school, as required by law. Such compensation may be paid to parents or guardians, and shall be payable only in

return for such actual transportation or board as shall be stipulated by the school directors."

■ It appears from these statutes that the matter of the transportation of school pupils in a town is to be controlled and managed by the board of school directors of such town in their discretion. In the case of *Carey* v. *Thompson et al.*, 66 Vt. 665, 667, 30 Atl. 5, in considering a statute which provided "* * * and such school board may use a portion of the school money, not exceeding twenty-five per cent thereof, for the purpose of conveying scholars to and from such schools." This Court stated at pages 666 and 667: "The end sought here is the equality of school privileges; but the Statute clearly recognizes the fact that entire equality is impossible of attainment, and that much must be left to the discretion of those in whose hands the administration of the law is placed. The differences in the number of scholars to be provided for, in the means available for the various demands of the work, in the proximity of schools and the condition of roads, and in the ages and strength of scholars, are such as to induce a belief that absolute rules would be more likely to work injustice than the exercise of official discretion."

■ An officer who is entrusted with a duty which requires the exercise of his judgment and discretion is entitled to proceed therein without judicial interference, and may render a decision that will be final and conclusive. *State* v. *Howard*, 83 Vt. 6, 14, 74 Atl. 392. If the duty is one that necessarily involves an inquiry of fact and an exercise of judgment on the case presented it is not ministerial but discretionary and the disposition of it made by the official will be binding upon the courts. *State* v. *Howard, supra*, 14; *Decatur* v. *Paulding*, 14 Pet. 497, 10 L. Ed. 559, 609; *United States* v. *Seaman*, 17 How. 225, 15 L. Ed. 226.

■ It is a well recognized rule that the performance of an official duty or act involving the exercise of judgment or discretion can not ordinarily be controlled by the courts with respect to the particular action which should be taken in the matter. To compel a board or official by mandamus to decide the facts under such circumstances in a particular way would be to substitute the judgment of the court for that of the board or official which the law does not permit. *Sanborn* v. *Weir et al.*, 95 Vt. 1, 5, 112 Atl. 228, and cases there cited to this proposition.

██ The petitioners recognize the general rule to be as above stated but contend that in this case there was an arbitrary abuse of the power vested by law in the board of school directors, amounting to a virtual refusal to perform the duty enjoined upon them by law, and that therefore mandamus may be resorted to in the absence of other adequate legal remedy. There is no doubt that under such circumstances mandamus may be resorted to. *Sanborn* v. *Weir et al., supra.*

However, in the case before us the board of school directors arrived at its decision concerning the matter of offering to furnish partial transportation for Robert as hereinbefore stated in the exercise of their discretion, reasoning and best judgment. It appears from what has been hereinbefore stated that under the circumstances of this case the general rule as above stated must control.

██ As to the matter of compensation for transportation furnished to Robert since the beginning of the present school year by the petitioners, the statutes hereinbefore set out contemplate that some contract or understanding must be had with the school board before they are authorized to pay for same. *Town School District of Maidstone* v. *Dempsey,* 103 Vt. 481, 486, 156 Atl. 387. The transportation furnished to Robert was without such contract or understanding and therefore the board of school directors have no authority to pay same.

*Petition dismissed with costs to the petitionees.*