264 P.2d 1029

**VANDENBERG v. WELKER et al.**

No. 8058.

Supreme Court of Idaho.

Dec. 23, 1953.

Robert E. Smylie, Atty. Gen., J. N. Leggat, J. R. Smead, Edward J. Aschenbrener, Asst. Attys. Gen., for appellant.

James W. Blaine and Dale Clemons, Boise, for respondent.

J. F. Martin and C. Ben Martin, Boise, and John R. Black and Arthur P. Oliver, Pocatello, amici curiae.

GIVENS, Justice.

Respondent, as a resident citizen and taxpayer of the State and the duly elected and qualified representative from Boundary County in the 32nd session of the Idaho Legislature, filed April 6, 1953, a petition for writ of mandate to compel appellants, Welker as chief clerk, and Schwiebert as assistant chief clerk, of the House of Representatives of that session, to deliver to the Secretary of State (as we interpret the petition) the daily journal entries of the House for the 16th, 17th and 18th legislative days, *as the permanent journals* as of those days.

An alternative writ was issued immediately and served the same day on Welker and, by the Sheriff's return, apparently never was served on Schwiebert. This writ commanded appellants:

" * * * to deliver to the Secretary of State of the State of Idaho the House Journal of the regular Thirty-second Session of the House of Representatives of the Idaho Legislature for the 16th, 17th, and 18th legislative days of said session, as said House Journal for said dates *Is* shown and set forth in Exhibits 'A', 'B', and 'C' attached to plaintiff's petition, said exhibits being, as provided by statute, the daily printed copies of the said Journal for the said legislative days, or that they show cause * * *, why they have not done so * * *."

By motion to quash, appellants challenged respondent as not being a proper party plaintiff, showing no beneficial interest in the subject matter of the action; that appellants have no duties, other than clerical, to perform with respect to the preparation of the journals of the House of Representatives, exclusively exercised and controlled by the Speaker of the House, and that appellants, therefore, were not proper parties defendant, and the petition did not state a cause of action for the relief prayed for against appellants.

The answer further alleged the duty of completing preparation of the permanent journal of the House was, by the House, confided in the Speaker thereof and appellants never had and did not at the time the

writ was applied for, have any duty of any kind with respect to the journal and that the true and correct permanent journal for the House was filed by the Speaker of the House with the Secretary of State April 23, without any alterations, changes, or falsifications therein; that pursuant to the directions of the House, the Speaker caused certain corrections to be made and that such permanent journal was completed and correctly prepared prior to April 5, 1953.

The Legislature adjourned March 6, 1953. The purported permanent journal of the House, as signed by the Speaker and chief clerk, was delivered to and receipted for by the Secretary of State April 23, 1953. Trial was had April 30 and a permanent writ entered September 8, 1953.

This controversy arose over the fact that the printed daily journals on the days in question showed, with regard to several bills which were purportedly passed on those days, that on the third reading thereof, a member, for example—

" * * * asked unanimous consent that further reading of House Bill No. 20 be dispensed with and the Bill placed before the House for final consideration. There being no objection, it was so ordered."

Thereafter, without further entries, except as to adjournment and other matters not germane hereto, the record shows (the same, in effect as to several bills) the following:

. "Shall House Bill No. 20 pass?" Roll call was set forth showing a majority in favor of the Bill and—

"Whereupon, the Speaker declared House Bill No. 20 passed."

The daily printed journal as distributed shows such daily journal was read each succeeding legislative day and approved in the report of the Journal Committee, which report was adopted by the House and such journal signed by the Speaker and attested by the clerk.

Whereas, the purported permanent House Journal as delivered to the Secretary of State, shows with regard to the third reading of the same certain bills on the three days, as follows (printed House Journal, p. 81):

"House Bill No. 20 was read the third time at length section by section and presented before the House for final consideration."

and its subsequent passage as set forth in the daily journal, and recites routine reading, approval, and attestation of such journal.

The findings of fact, conclusions of law and judgment made the writ permanent, thus:

"It Is Ordered that the defendants deliver to the Secretary of State of the State of Idaho the House Journal of the House of Representatives for the regular Thirty-second Session of the

Idaho Legislature for the sixteenth, seventeenth and eighteenth legislative days as said House Journal for said days *Is* shown and set forth in Exhibits 'A', 'B', and 'C' attached to plaintiff's petition."

The judgment and writ are not altogether clear as to whether the clerk was ordered to merely deliver the physical, printed daily journals for the three days in question, or whether he was ordered to deliver them *as the permanent journals.*

Mandamus will not lie unless the party seeking it has a clear, legal right to have the act done for which he seeks the writ, and it is the clear legal duty of the officer to act. Section 7–302, Idaho Code; Brooks v. Edgington, 40 Idaho 432, 233 P. 514; Reynard v. City of Caldwell, 53 Idaho 62 at page 81, 21 P.2d 527, citing other Idaho cases; McDonald v. Pritzl, 60 Idaho 354 at page 357, 93 P.2d 11.

Section 67–602, Idaho Code, provides there shall be one chief clerk and one assistant clerk and one journal clerk in the House.

The sequence of duty and authority with reference to the journal is that it is the duty of the clerk of the House to keep a correct record of the proceedings of the House each day, such proceedings to be entered in the journal by the journal clerk, Section 67–603, I.C., and read the next legislative day and if approved by the Committee on Journal (Rule 38) or, if necessary, correct-ed by and in the House (Rule 40), signed by the Speaker and clerk, and so printed daily and distributed, Section 67–509, I.C.

No further duty or responsibility or power is given the clerk, except to keep generally the records and papers belonging to the House until and after the completion of the permanent journal by the Speaker, 1953 Session Laws, Chapter 230, page 345, when, together with all bills and papers and books belonging to the archives of the House, the permanent journal is to be delivered to the Secretary of State. Section 67–604, I.C.

Neither the permanent nor the daily journal is mentioned in Section 67–604, I.C., but the terms thereof seem clearly broad enough to include the permanent journal prepared by the Speaker as a record of the House and so to be delivered to the Secretary of State.

Undoubtedly it was the duty of the clerk, if the permanent journal came into his possession after it had been prepared by the Speaker, to deliver it to the Secretary of State; likewise, it was his duty under Rule 20 to keep all records and papers belonging to the House in his possession and deliver them, after the adjournment of the session, to the Secretary of State. This would include the physical, printed daily journals, but no statute or rule imposes the duty or gives him the authority, himself, to determine *what* is the permanent journal and so label it. By Chapter 230, 1953 S.L., page 345, supra, the Speaker is to complete

the preparation of the permanent journal. Though the Speaker may employ clerical assistants, the duty and responsibility and authority for the preparation of the permanent journal are his and not the clerk's.

Herein we merely hold that respondent has not shown any duty or authority on the part of the clerk to more than deliver printed copies of the journals for the three days in question and he has no duty or authority, under any statute or rule, to designate them other than the daily journals for such dates. In this proceeding, involving the preparation of the permanent journal, after the Legislature has adjourned, the trial court or this Court has no jurisdiction in this corrective proceeding to determine what the Speaker of the House—the officer charged with the duty of completing the preparation of the permanent journal—should or should not put in such permanent journal, *where the Speaker is not a party to this suit,* since by Chapter 230, supra, he is the indispensable party defendant.

We do not in any way forecast or pass upon the effect of these discrepant journal records, if called in question in any other proper litigation.

To the extent the clerk was required to deliver to the Secretary of State the physical, printed daily journals as approved by the Journal Committee and authenticated by the Speaker and clerk each day, the writ is affirmed. To the extent it ordered the clerk to deliver such daily journals *as the permanent journals,* it is reversed, because that is beyond his power and beyond the power of the Court herein to order him to do, and as to that portion of the judgment, the action is ordered reversed and remanded with instructions to dismiss it. No costs allowed.

PORTER, C. J., TAYLOR and THOMAS, JJ., and BAKER, District Judge, concur.