328 P.2d 582

J. Ben LEUHRS, John A. McBoyle, Clifford M. Irwin, C. H. Ketcham, and John E. Gortsema, Plaintiffs-Respondents,

` v.

R. U. SPAULDING, Commissioner of Finance of the State of Idaho, Defendant-Appellant.

No. 8616.

Supreme Court of Idaho.

Aug. 6, 1958.

Graydon W. Smith, Atty. Gen., Elbert E. Gass and Wm. C. Roden, Asst. Attys. Gen., for appellant.

Carver, McClenehan & Greenfield, Boise,
Donart & Donart, Weiser, for respondents.

BAKER, District Judge.

The defendant, Commissioner of Finance, appealed from judgment of the trial court, in mandamus proceedings, that he approve as to form and content and return to the plaintiffs the articles of incorporation of the Bank of Central Idaho, and issue to it certificate or charter authorizing it to engage in the banking business at Grangeville in this state. The parties will be referred to as they appeared in the trial court.

Grangeville, a city of the second class, county seat of Idaho County, has a population of 3,300, is within the highly fertile and prosperous grain-growing area of the state known as Camas Prairie. The record does not establish the value of the crops annually produced in that area, but it is made to appear that the farmers are very prosperous. The forests in the vicinity produce substantial quantities of forest products of undisclosed value and furnish employment for many men. The trial court found, upon evidence the sufficiency of which is not questioned, that the annual payroll of the men employed in the mills and forests is in excess of $3,000,000 and that the merchants transact retail business in volume greater than $12,000,000 per year. The First Security Bank of Idaho has a branch bank at Grangeville with deposits in excess of $7,500,000. The deposits in other banks in that vicinity are greater than that sum.

On March 13, 1956, the five plaintiffs executed articles of incorporation for the organization of a banking corporation to do business at Grangeville under the name of "Bank of Central Idaho". The authorized capital stock had a par value of $150,000. The articles recited that all stock had been subscribed.

On March 19, 1956, plaintiffs filed with the defendant, as Commissioner of Finance, their application for approval as to form and content and return to them of the articles of incorporation and for the issuance by him of charter for the proposed bank. The defendant submitted the articles of incorporation to the office of the attorney general for approval as to form and content. While the articles were approved by that office the defendant did not by endorsement on the articles formally approve. Without such approval the articles could not be and, of course, were not filed in the offices of the county recorder and the secretary of state. Section 26–203, I.C., requires such approval before filing. With the application for charter plaintiffs submitted the supporting data and information required by Section 26–207, I.C.

On December 3, 1956, after the application for charter had remained in the defendant's office for eight and one-half

months without formal action, the plaintiffs instituted this suit to obtain decree requiring defendant to approve the articles of incorporation and to issue the charter.

The position of the plaintiffs was that the defendant had in fact found favorably to the plaintiffs on all questions essential to the issuance of charter, including an opinion that conditions were such as to warrant a new and additional bank at Grangeville, that issuance of charter was then a ministerial act especially enjoined by law which he had failed to perform and that plaintiffs were entitled to enforce performance by mandamus.

The trial court expressly found that plaintiffs had filed all instruments required by law, that the bank "had complied with all provisions of law required to entitle it to engage in the banking business except such as by their nature could not be accomplished while the defendant withheld the articles of incorporation"; also "that the Commissioner also ascertained from the best sources of information, to-wit, from a personal examination made in the vicinity of Grangeville and an investigation of the financial resources of the stockholders of said proposed bank, and this court hereby finds that the character and general fitness of said stockholders and officers of said bank are such as to command the confidence of the community in which said bank is proposed to be located; that said defendant

in his capacity as such commissioner upon such examination ascertained, and this court hereby finds, that said bank is lawfully entitled to commence business and the officers and directors thereof were and are competent to engage in the banking or banking and trust business and that its stockholders were and are such as to command the confidence of the community"; and "that said defendant in his capacity as Commissioner of Finance after making such investigation and ascertaining the facts, as aforesaid, formed the opinion based upon such facts that the organization of said bank was, and is, justified and expressed said opinion to the officers of said bank".

The conclusions which naturally followed the foregoing Findings of Fact were, among others, that it was the positive duty of the defendant, Commissioner, to issue the charter and that no authority or discretion existed under the facts established to deny it. Decree in conformity was made.

The chief contentions of the defendant are, first, that the Findings of Fact above quoted are not sustained by competent evidence; and, second, stated with greater variety than is usually encountered, that the issuance of a bank charter is a matter wholly committed to the discretion of the Commissioner, not subject to review by the courts unless found to be clearly unreasonable, capricious or arbitrary. Other questions regarded as minor and not controlling, are urged and will later be noticed.

Counsel appear to be in agreement as to the major principles of law involved in this case. These principles are, as to the first question, that if there is substantial, although conflicting, evidence to sustain the Findings of Fact, this court may not avoid, and as to the second, that the court may not review a discretionary act supported by same facts or substitute its judgment unless the conclusion reached and the judgment rendered by the officer are clearly unreasonable, capricious or arbitrary.

Section 26–207, I.C., provides in part:

"Upon filing the foregoing, it shall be the duty of the department of finance to immediately examine into the condition of said bank, ascertaining whether or not the capital has been paid in and whether such bank has complied with all the provisions of the law required to entitled it to engage in the business of banking. It shall also ascertain from the best sources of information at its command whether the character and general fitness of the persons named as stockholders and officers are such as to command the confidence of the community in which such a bank is proposed to be located. If, upon such examination, it appears that said bank is lawfully entitled to commence business, and the directors and officers are competent to engage in the banking or banking and trust business, and its stockholders are such as to command the confidence of the community, and if, in the opinion of the commissioner of finance the organization of the bank is justified, the department of finance shall forthwith issue to such bank a certificate, under its official seal, as provided in this section.

"If the department has reason to believe that the stockholders have formed the same for any other than the legitimate business contemplated by this chapter, it shall withhold such certificate, and it may withhold the issuance of such certificate to a bank seeking to engage in business in a village, city or community which in its judgment does not justify or warrant a new or additional bank."

The above quoted provision from Section 26–207, I.C., authorizes the commissioner to ascertain, weigh and pass judgment upon the facts relating to the character and general fitness of the persons named as stockholders and officers to command the confidence of the community, their competency to engage in the banking business and whether conditions warrant the organization of a new and additional bank.

These matters clearly involve discretion. Proctor v. Hufnail, 111 Vt. 365, 16 A.2d 518; State ex rel. Millers Nat. Ins. Co. v. Fumbanks, 177 Tenn. 455, 151 S.W.2d 148. The same statute makes it the mandatory duty of the commissioner, if the ques-

tions be answered in the affirmative, forthwith to issue the certificate and authorizes him to withhold certificate if answered in the negative.

On May 15, 1956, in company with a representative of the Federal Deposit Insurance Corporation, the defendant made a personal and on the ground investigation at Grangeville. What information he obtained on that trip or what opinion he formed, if any, is not disclosed. He did not, following that trip or at any time during the period of six months while the application remained in his office without his approval or rejection, inform the applicants, although they made frequent visits to his office and made numerous inquiries, of any fact which had come to his attention on that investigation or from other sources or within his knowledge which would cause him to conclude either that the stockholders were unfit to operate a bank or would not command the confidence of the community or that conditions did not warrant a new and additional bank at Grangeville. He did not at any time indicate to the plaintiffs or their counsel that the discretionary matters were giving him any concern or that such matters were regarded as any obstacle to the issuance of the charter.

The plaintiffs were diligent and between the filing of the application and to and including December 3, 1956, on which date the present action was commenced they, sometimes with their counsel, made repeated visits to the office of the defendant, repeated requests for action on the application, repeated inquiries as to the reason for the delay and inaction and expressed willingness to do anything the defendant might require to bring about favorable action. There was considerable testimony by the plaintiffs and their attorneys, not denied by the defendant, that on these occasions the defendant had said to them that the attorney general and he had approved the articles of incorporation, that he had made no objection to the form of the application for charter or the sufficiency of the supporting data and that the applicants had done all they could or should do but that the banking situation in Idaho was in somewhat of a turmoil and he feared that if he issued the charter the Comptroller of the Currency would grant pending applications for the issuance of other national bank charters.

Two meetings with the defendant received considerable attention at the trial. On November 9, 1956, the plaintiffs and one of their attorneys, by appointment, called at the office of the defendant for conference with him. A rather extended, perhaps heated, discussion took place. The defendant was more than reluctant to issue the charter. The parties were in agreement that the defendant in response to an oral demand for the issuance of a charter said in substance: "If that is a demand for a charter now, it is denied." However, it was agreed that the application be further considered. The

parties did not regard the statement of the defendant as a denial. It is observed that at that meeting the defendant voiced no complaint that the stockholders and officers were unfit to conduct a bank or were of such character as not to command the confidence of the community or that the organization of a new and additional bank at Grangeville was not justified.

Following the commencement of this action on December 3, 1956, and on the same day, two of counsel for the plaintiffs talked with the defendant at his office and informed him that action had been commenced. The defendant expressed regret and indicated a belief or hope that if publicity was withheld for the period of two days a solution of the problem might be found and said he intended to call or to confer with the Comptroller of the Currency. Publicity was withheld but nothing was done by the defendant. Evidence of the conference is regarded as of considerable importance for at that, and it was the final, discussion the defendant did not charge unfitness of the officers, or that the bank was not entitled to a charter or that conditions did not warrant a new and additional bank at Grangeville. The defendant indicated some dissatisfaction with the man the plaintiffs proposed to engage as manager, but he indicated dissatisfaction only, did not say he regarded that as sufficient to warrant denial of the charter and also stated that he made no request that applicants select another. At all

times the defendant seemed to fear that if he issued a charter to the Bank of Central Idaho, the Comptroller of the Currency would counter by issuing charters, on pending applications, for other national banks. He did not say why the fear should prevent him from acting favorably on the application or be of concern to him or create a banking turmoil.

On December 18, 1956, two weeks after the final discussion between him and counsel for the plaintiffs, the defendant made Findings of Fact and order denying the application for the charter. On the trial the defendant offered in evidence such findings and orders. The trial court sustained objection on the obviously valid ground that the right of the plaintiffs to recover was to be determined by facts existing at the time of the commencement of the action and their right could not be prejudiced or affected by subsequent action of the defendant. There was no offer of proof by the defendant, and the record does not disclose the reason then assigned by him for denial of the application. The defendant did not, as was done in the case of Bank of Italy v. Johnson, 200 Cal. 1, 251 P. 784, 787, upon which the defendant places such reliance, affirmatively plead that he had made an on the ground investigation and as a result and from the facts within his knowledge had determined that "public convenience and advantage"—terms used in the California statute, West's Ann.Cal.Financial Code, §

503—would not be promoted, and for that reason denied the charter. In this case we are left without satisfactory information as to the reason for the defendant's delayed action or the reason for his ultimate denial of the application. The failure of the defendant at any time or in any manner to suggest doubt or concern as to discretionary matters goes far toward the conclusion that such matters in his mind afforded no reason to deny the application.

The testimony of the defendant on cross-examination seems clearly to indicate that the two matters just mentioned—dissatisfaction with proposed manager and fear of action by the Comptroller of the Currency—were his chief complaints and his reasons for his inaction. He said in part:

"Q. Now, when you discussed this matter on the 9th of November with the proposed stockholders or directors of the Bank of Camas Prairie, didn't you state to them at that time that the thing that was holding back your decision was the opposition or the action of the Comptroller of the Currency? A. Partially.

"Q. Yes; you told them that was one of your reasons? A. Yes, sir.

"Q. In fact, that is the only reason you gave them at that time, isn't it? A. I wouldn't say that.

\*   \*   \*   \*   \*   \*

"Q. Did you make a statement that you were afraid that the Comptroller of the Currency would charter a lot of branch banks if you chartered an independent bank? A. That was the probability they would.

"Q. Did you make that statement? A. Yes, I think I did.

"Q. And the probabilities that he would charter a lot of branch banks was one of the reasons you gave them for not giving them a charter for the bank of Camas Prairie at that time and at that meeting, wasn't it? A. One of the reasons that we were definitely and very closely guarding any charter.

"Q. That was one of the reasons; that you were very carefully guarding the granting of any charter for fear of the chartering of a bunch of branch banks? Is that it? A. Well, I didn't know just what status we were going to take on.

\*   \*   \*   \*   \*   \*

"Q. Would you say you gave them any other reason at that time? A. The situation of the management.

"Q. Would you say that you gave them any other reason at that time? A. Yes.

"Q. What did you tell them? A. They didn't line up on management.

"Q. What did you say about the management? A. They just simply hadn't presented anyone that would be qualified to run a bank of this type.

\*   \*   \*   \*   \*   \*

"Q. Well, just what did you say about the management? A. They hadn't come to the surface with an experienced, diversified credit man as manager for any proposed bank.

\*   \*   \*   \*   \*   \*

"Q. And you told them that Cunningham was not suitable as a manager, is that right? A. No, sir; I didn't make that statement.

\*   \*   \*   \*   \*   \*

"Q. Now, as regards your objection to the management of this bank, they spoke of a man by the name of Cunningham, did they not? A. Yes, sir.

"Q. Is that George T. Cunningham? A. I think his name is George.

"Q. Well, at that time he was manager of the New Plymouth branch of the Continental State Bank, wasn't he? A. Yes, sir.

"Q. Now, what was your objection to Mr. Cunningham? A. To the best of my information, Mr. Cunningham had never run a bank.

"Q. What do you mean by run a bank? A. He wasn't in full charge.

\*   \*   \*   \*   \*   \*

"Q. Now, did you tell them that they should get a different manager? A. No, sir."

■  We do not believe fear of the defendant of retaliation by the Comptroller of the Currency is of itself a legal reason for denying the charter. It is not one of the statutory reasons for withholding.

The plaintiffs had engaged as manager a man who had for an undisclosed period of time been employed by the Continental State Bank as the manager of one of its branches. Despite several recommendations as to his competency, including one from the president of the Continental State Bank and a statement by him that said branch manager had been given almost unlimited control, the defendant was dissatisfied with him because he had not "run a bank." He did not request that the plaintiffs submit another name. It would seem that fairness would have required the defendant to give the plaintiffs the opportunity to avoid that objection.

■■  We conclude that the findings are sustained by competent evidence, that the conclusions are warranted by the facts found and that the defendant's contention of discretionary action cannot be sustained. The defendant expressly approved the application as to all matters except those discretionary. He did not at any time inform the plaintiffs of his reluctance or refusal

to grant the charter on any discretionary ground. We conclude that under the facts the granting of the charter by the defendant was purely a ministerial act and as against the objections to this point considered the writ was properly issued.

Defendant also insists that mandamus may be employed only when demand has been made. The statute (I.C., Sec. 7-302) relating to mandamus actions does not so require. We have been cited to and have found no case that as a condition to the right to the remedy the plaintiffs must make definite and specific written demand upon the defendant that he do and perform the act sought. By the statute the failure or refusal to perform an act especially enjoined as a duty resulting from an office is all that is required. The application in itself was a demand, although in milder terms. The repeated inquiries and requests were also demands. There is not a suggestion that the defendant at any time had any doubt as to what the plaintiffs sought and demanded.

Defendant asserts that plaintiffs' appropriate remedy was by proceeding to require the defendant to act and not one to require him to issue the certificate. The evidence discloses more than a failure or refusal to act. The evidence justifies the conclusion that before the suit was commenced the defendant had determined to deny the application but perhaps had not decided upon the reason to be assigned. Formal demand that he act or a suit to require him to act undoubtedly would have produced a denial based upon grounds clearly involving discretion. A suit of that character would have marked the end of plaintiffs' hope to obtain charter.

Defendant contends the proof of the plaintiffs is insufficient in that it does not establish that the entire capital stock plus the addition of ten per cent, as required by I.C., Sec. 26-206, was not paid before application for the charter was filed. By I.C., Sec. 26-202, banks in cities and communities having a population of more than 3,000 but less than 6,000 are required to have a capital of $50,000. By I.C., Sec. 26-205, the entire capital must be paid in "before such bank shall be authorized to commence business." The minimum capital stock required in communities of the size of Grangeville is $50,000, and the minimum to be paid is $55,000. The proof disclosed that $126,237.45 was collected but when is not made to appear. The amount paid was more than double the amount required if the capital stock had been for the permissible minimum although it was not the amount required by the actual capital stock. That sum was on January 19, 1957, one and one-half months after suit was commenced, deposited in a Boise bank. There was proof that the balance would be paid on demand, also that the defendant had said to the plaintiffs that they were premature because payment could be made after the charter was issued and

before the bank commenced business. The interpretation so placed on the statute by the defendant was reasonable. The defendant at no time objected to the failure to collect in full at the time the application was made and at no time requested full payment.

The judgment of the trial court is affirmed. Costs awarded to respondent.

KEETON, C. J., and TAYLOR and SMITH, JJ., concur.

McQUADE, J., dissents.