452 P.2d 343

Frank J. ALLEN, Plaintiff-Appellant,

v.

Robert E. SMYLIE, Louis E. Clapp, Allan Shepard, Attorney General, Joe Williams, State Auditor, and Delmer F. Engelking, Superintendent of Public Instruction, as State Board of Land Commissioners, and O. J. Buxton, Commissioner of the Department of Lands, and Monsanto Company, a corporation, Defendants-Respondents.

No. 10113.

Supreme Court of Idaho.

March 18, 1969.

848

---

· Givens & Givens, Boise, for appellant.

Allan G. Shepard, Atty. Gen., and Warren Felton, Asst. Atty. Gen., Boise, Hawley, Troxell, Ennis & Hawley, Boise, Senior & Senior, Salt Lake City, Utah, for respondents.

PRATHER, District Judge.

This case concerns the validity of certain phosphate mineral leases of school lands granted by the State of Idaho to respondent Monsanto Company in 1958 for a term of ten years. Leases for five year terms were originally issued to Monsanto in 1948, under I.C. § 47–704, which then read, so far as pertinent, as follows:

"All mineral leases of state school land shall be for a period of five years, upon condition that at the end of each five-year period succeeding the first day of the year in which the lease is issued the leaseholder shall be given a preferential right of renewal under such readjustment of terms and conditions as the board may determine to be necessary in the interest of the state.

"All mineral leases for lands belonging to the state of Idaho other than school lands, including the lands in the beds of navigable rivers of the state, shall be for a period not exceeding ten years upon condition that at the end of said ten-year period the leaseholder shall be given a preferential right of renewal under such readjustment of terms and conditions as the board may determine to be necessary in the interest of the state."

In 1949, I.C. § 47–704 [1] was amended to provide that the term of state mineral leases for school lands "shall be for a term of ten years and as long thereafter as such mineral is produced in paying quantities therefrom." S.L.1949, Ch. 77, § 1, p. 135. The clauses of the earlier act specifically dealing with a preferential right of renewal were deleted.

In 1953, Monsanto was again issued leases for the five year period specified in the earlier of the two above versions of the statute.

In 1957, I.C. § 47–704 was amended, so far as pertinent, to read:

"All mineral leases, except leases for oil, gas, and other hydrocarbons, of state school lands and for lands belonging to the State of Idaho, other than school lands, shall be for a term of ten years, and so long thereafter as precious metals, minerals, and ores, or any of them, are produced in paying quantities, or as much longer thereafter as the lessee in good faith shall conduct mining operations thereon, together with the right to use and occupy so much of the surface of said land as may be required for all purposes reasonably incident to the prospecting for, exploration for, development of, production, refining, processing and marketing of said precious metals, minerals and ores produced from said lands, including the right to construct and maintain thereon all works, buildings, plants, waterways, roads, communication lines, reservoirs, tanks or other structures necessary to the full enjoyment thereon for the purposes of the lease.

"Application for mineral leases shall be made under oath in such form as the board may prescribe, and the applicant shall describe the land, indicate the annual rental and royalty offered by him, specify the particular mineral or minerals, and give such additional information as may be required by the rules and regulations of the board. * * *" S.L.1957, Ch. 210, Sec. 1, p. 439.

---

[1] This section was formerly I.C.A. § 46–706 as amended, and is referred to as such in S.L. 1949, Ch. 77, Sec. 1, p. 135.

Pursuant to the above amendment, the State Board of Land Commissioners adopted a new form of lease, which form changed a number of terms of the old lease, among other things changing the term from five to ten years.

Monsanto's original leases had a five year term, which term began in January, 1948. The 1953 leases extended the term to January, 1958. In October, 1957, Monsanto began correspondence with the Land Commissioner of Idaho regarding new leases.

It is a point of contention between the parties whether the 1958 leases are renewals of the prior leases or are in fact new leases. In the correspondence of March 13, 1958, Dr. Emigh, Director of Mining for Monsanto, referred to this as "converting our present state phosphate leases over into a new proposed form." In a letter of October 7, 1957, Monsanto had agreed to the basic terms of the new form, suggested correction of certain minor errors, and requested that the new forms be forwarded so that the necessary company signatures might be affixed. The issuance of these ten year leases was unanimously approved by the State Board of Land Commissioners at the regular meetings of July 16, 1958, and October 13, 1958.

Under date of December 5, 1963, more than five years after the issuance of the 1958 leases, appellant Frank Allen filed in the office of the Idaho State Land Commissioner two applications for mineral leases covering a portion of the land covered by Monsanto's three phosphate leases. The appellant contended that there had been no application under oath by the

prior lessee, and that therefore the pretended leases were invalid. The State Land Commissioner rejected these applications, in a letter of June 26, 1964, after obtaining an opinion of the attorney general on the ground that there were existing valid leases covering the property.

A hearing before the State Land Board was held on March 20, 1965. On October 28, 1965, the Board unanimously rejected appellant's applications.

Appellant, on August 4, 1966, filed the pending suit, in which he requested alternative writs of prohibition and mandate ordering the Board to "cease its enforcement" of the Monsanto leases and requiring it to issue leases based on appellant's applications. From a summary judgment entered in favor of respondent, Monsanto, appellant Allen has brought this appeal.

Respondents first contend that even if the purported leases were void, and if a writ of prohibition did lie, then appellant still could not maintain a writ of mandate, since the matter in question is one which concerns discretionary action by the State Land Board.[2] I.C. § R7–303 provides that the writ issue "in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law."

This court has held that mandamus may well lie against decisions of the State Board of Land Commissioners. East Side Blaine County Livestock Association v. State Board of Land Commissioners, 34 Idaho 807, 198 P. 760 (1921); Furbee v. Alexander, 31 Idaho 738, 176 P. 97 (1918).

However, I.C. § 7–302[3] states additional prerequisites to the issuance of a writ of mandate. This court has had

2. Since the parties have not questioned whether a writ of prohibition should issue in the present circumstances, the following discussion is limited to deciding whether the writ of mandate is proper.

3. 7–302. When and by what courts issued.—It may be issued by any court except a justice's or probate court, to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station; or to compel the admission of a party to the use and the enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person.

occasion to interpret this statute, and the following rule has emerged:

"Under this section this court has repeatedly held that mandamus will not lie unless party seeking it has clear legal right to have act done for which he seeks the writ and unless it is clear legal duty of officer to act; and will not lie to coerce or control discretion of the district court. Board of Commissioners of Shoshone County v. Mayhew, 5 Idaho 572, 51 P. 411; Connolly v. Woods, 13 Idaho 591, 92 P. 573; Olden v. Paxton, 27 Idaho 597, 150 P. 40; Blackwell Lumber Co. v. Flynn, 27 Idaho 632, 150 P. 42; Saint Michael's Monastery v. Steele, 30 Idaho 609, 167 P. 349; Brooks v. Edgington, 40 Idaho 432, 233 P. 514; Logan v. Carter, 49 Idaho 393, 288 P. 424; Aker v. Aker, 51 Idaho 555, 8 P.2d 777; Vandenberg v. Welker, 74 Idaho 508, 264 P.2d 1029; Leuhrs v. Spaulding, 80 Idaho 326, 328 P.2d 582." Freeman v. McQuade, 80 Idaho 387, 331 P.2d 263 (1958).

■ In deciding whether a writ of mandate could properly issue in the present case, thus requiring the State Board of Land Commissioners to grant mineral leases to appellant, the court must first decide what function the Board plays in the issuing of leases. If, when proper applications for a lease are filed, the Board must grant the leases, then—again, assuming arguendo the Monsanto leases are void— a writ of mandate would be an available remedy. On the other hand, if the question whether to grant mineral leases is one which is left within the sound judgment and discretion of the State Board of Land Commissioners, then a writ of mandate would not be available to compel the issuance of such a lease.

Art. IX, Sec. 8 of the Constitution of the State of Idaho, so far as relevant, provides that, "It shall be the duty of the state board of land commissioners to provide for the location, protection, sale or rental of all the lands heretofore, or which may hereafter be granted to the state by the general government, under such regulations as may be prescribed by law, and in such manner as will secure the maximum possible amount therefor." I.C. § 47–701 specifically reserves to the state all mineral deposits on state lands until the rights to such deposits are specifically sold or leased. I.C. § 47–704 provides the following guidelines for leases of mineral rights in state lands:

"The state board of land commissioners *may* lease in tracts not exceeding 640 acres for prospecting and mining purposes, and mineral deposits * * * that may be contained in any portion of * * * [state lands] * * * for such annual rental, not less than twenty-five cents (25¢) per acre per annum, and for such royalty upon the product as the board may deem fair and in the interest of the state * * *" (emphasis supplied)

■ From the above constitutional and statutory language, it is apparent that the State Board of Land Commissioners is required to use considerable judgment in the granting of mineral leases. The constitution required the Board to "secure the maximum possible amount therefor." It is with the judgment of the Board whether the leasing to a particular lessee of particular land at a particular time, for whatever rental, would "secure the maximum possible amount therefor." We therefore hold that to grant or reject a lease is a discretionary power of the Board, and thus the writ of mandate would not be available to compel them to do so in the absence of conduct that is arbitrary, capricious or discriminatory.

But appellant contends that the writ would nonetheless be proper in the present instance, since the only stated reason of the Board in denying appellant's applications was the existence of presently valid leases covering the same lands. Thus, appellant contends that if the presently existing leases are found to be void, there would be no basis for the Board's rejection of the applications, and the writ

might properly compel their approval. But such conclusion does not necessarily follow.

■ From the record, this court can only conclude that after finding that valid leases covering the same land were already in effect, it was unnecessary for the Board to make further inquiry. If we were to determine that the Monsanto leases are void, no writ of mandate could issue compelling the Board to issue leases based on appellant's applications. Such issuance can be based only on the sound determination of the Board in accordance with the previously noted statutory criteria and based on all the facts and circumstances of the particular case. State ex rel. Thompson v. Babcock, 147 Mont. 46, 409 P.2d 808 (1966); East Side Blaine County Livestock Association v. State Board of Land Commissioners, 34 Idaho 807, 198 P. 760 (1921); cf. Furbee v. Alexander, 31 Idaho 738, 176 P. 97 (1918); see also United States ex rel. Jordan v. Ickes, D.C., 55 F.Supp. 875, affirmed 79 U.S.App.D.C. 114, 143 F.2d 152, cert. den. 320 U.S. 801, 64 S.Ct. 432, 88 L.Ed. 484, cert. den. 323 U.S. 759, 65 S.Ct. 93, 89 L.Ed. 608 (1944).

■ In attacking the validity of the leases granted to Monsanto, appellant makes essentially two arguments: (1) The leases cannot be considered to be renewal leases and are void as original leases, since the application procedure was deficient, in that no application under oath was made, as required by I.C. § 47–704; and (2) failure of Monsanto to perform the lease. Appellant seeks a writ of prohibition, as provided by I.C. § 7–401[4] to compel the State Board of Land Commissioners to "cease enforcement" of the leases. Since the parties have not raised the question of the propriety of the writ of prohibition in the case at bar, we specifically make no decision as to that point. It is unnecessary to

reach that question, since we find no merit in appellant's contentions.

■ It is true that the leases are not renewal leases. In fact they could not be. It is noted that the 1948 leases were made pursuant to I.C. § 47–704 as it then existed. Said section gave the lessee "*a* preferential right of renewal." (emphasis supplied) The terms of the law as it existed in 1948 became a part of the lease contracts of that year. The 1948 law gave only one preferential right to renew. The preferential renewal rights of Monsanto were fulfilled by the 1953 leases.

■ It should be noted that while the 1948 law (originally adopted in 1939) and the 1967 law speak of a preferential right of renewal, that term is not synonymous with an option to renew. The renewal preference is only on such terms as the Land Board may propose. It would be more accurate to speak of the right given by the statutes as a right of first refusal. However, to conclude that the questioned leases are not renewals does not resolve the issue in appellant's favor. The next question is whether the failure of the Land Board to obtain a written application under oath renders the leases void. It is our conclusion that it does not, because the portion of I.C. § 47–704 pertaining to applications under oath is not applicable to the facts herein.

■ The pertinent portion of I.C. § 47–704 reads, "[A]pplications for mineral leases shall be made under oath." This language can only apply to one who is asking or offering to lease state lands and does not apply to the recipient of an offer to lease by the Land Board. Such was the situation in the case at bar. The 1953 leases would expire in .1958. The record shows that on October 7, 1957, Monsanto agreed to and accepted the terms of new leases tendered and offered by the State Land Board. Nowhere in the record does it ap-

4. 7–401. Definition.—The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board or per-son, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person.

pear Monsanto initiated the negotiation for the leases now in dispute.

Such determination renders inapplicable the cases of Al Warden et al., 67 Interior Dec. 223, 1960, and Jenia Ben Ezra et al. 67 Interior Dec. 400, 1960, relied upon by appellant.

Furthermore, even if Monsanto had been an applicant, there is authority that defect in the procedure by which public lands are leased will not justify cancellation of a prior issued lease when there has been no application of a third party between the time the defect occurred and the time the lease issued. Steven P. Dillon et al., 66 Interior Dec. 148, 1959; D. Miller, 63 Interior Dec. 257, 1956; Arnold R. Gilbert, 63 Interior Dec. 328, 1956; Earl W. Hamilton, 61 Interior Dec. 129, 1953.

■ There is no reason the Land Board cannot originate offers to lease. The Idaho Constitution, Art. IX, Sec. 8, provides that, "It shall be the duty of the state board * * * to provide for * * * rental of all the lands * * * under such regulations as may be prescribed by law, and in such manner as will secure the maximum possible amount therefor." This enjoins a duty upon the Board to lease for maximum return under procedural regulation of the legislature. The constitutional duty of the board is self-executing. Therefore, if the legislature has not specified the procedure the Board may adopt appropriate procedures to carry out its constitutional duties. A careful search of the applicable legislative acts fails to disclose any legislation that would prohibit initiating of lease proposals by the board.

■ The foregoing reasoning applies to appellant's contention that Monsanto had not performed the leases. On this point it is conceded that there has been no mining or exploration on the lands described in the lease. The leases required that within five years of execution the sum of ten dollars per acre be spent in exploratory or mining improvement of the leased land or for the benefit thereof. This requirement of the lease can be met only if respondents can be credited with work and expenditure on other lands leased by it.

The record is clear that respondent has an extensive mining and processing operation that has required and will require expenditure of large sums of capital. Such expenditure would not be justified without sufficient ore reserves to assure the continued source of ore for the processing plant. Respondents have made such expenditures on other lands it leases and the lands in the leases here questioned are a part of respondents' ore reserve. The expenditures on other lands will aid the development and mining of the properties here involved.

■ We find nothing in the statutes that prohibits the board from executing such lease terms. It is within the Land Board's constitutional power and discretion to lease for maximum return. It is for the Board to decide if such terms were a necessary part of obtaining phosphate leases for maximum return. In the absence of statutory prohibition, the Board's determination of lease terms will not be disturbed by the court unless clearly discriminatory, capricious or unreasonable. The Congress of the United States and the Idaho Legislature have long recognized and permitted the practice of doing work upon one mining property for the benefit of other mining property as long as a minimum total is performed. (See legislative history of U.S.C.A. Title 30, Sec. 28 and of I.C. § 47–703.)

■ Such provision does not give control of the property to respondents in perpetuity as contended by appellant. The leases are for a limited term. At the end of that term of years the provision of any new lease must be upon such terms as determined by the Land Board. It must be presumed that the Land Board at that time will exercise its constitutional duty to obtain the maximum return for the State of Idaho.

Judgment affirmed.

Costs to respondents.

McQUADE, Acting C. J., McFADDEN, SPEAR and DONALDSON, JJ., concur.