3 P.3d 51

**Starr KELSO and Jon Irwin, individually, and Kelso & Irwin, P.A., a professional corporation, Plaintiffs–Appellants,**

**v.**

**Alan G. LANCE, Attorney General for the State of Idaho; State of Idaho, Jane Does A–Z; John Does A–Z, Entities I–V, Defendants–Respondents.**

No. 25413.

Supreme Court of Idaho,
Boise, November 1999 Term.

March 3, 2000.

Rehearing Denied May 10, 2000.

Scott W. Reed, Coeur d'Alene, for appellants.

Hon. Alan G. Lance, Attorney General, Boise; Paine, Hamblen, Coffin, Brooke & Miller, Coeur d' Alene, for respondents. Peter C. Erbland argued.

KIDWELL, Justice.

Plaintiff attorneys represented the Industrial Special Indemnity Fund (ISIF) pursuant to a contract with the Attorney General's Office. When these attorneys filed a notice of tort claim on behalf of private clients against the State Insurance Fund (SIF), the Attorney General characterized it as a conflict of interest. When the attorneys refused to choose between representing their private clients and the ISIF, the Attorney General withdrew their appointments as special deputy attorneys general. The district court granted summary judgment to the Attorney General. We affirm.

## I.

### FACTS AND PROCEDURAL HISTORY

The Attorney General of the State of Idaho provides legal representation to a number of state entities, among them are the ISIF and the SIF. To assist in this representation, the Attorney General appoints private attorneys as special deputy attorneys general. This appeal involves two of these appointed attorneys.

On June 16, 1995, Starr Kelso and Jon Irwin submitted a proposal on forms provided by the State, for legal services with the Attorney General's office. The proposal was to represent the ISIF as a special deputy attorney general. To determine any possible conflicts of interest, the proposal form included a request for information on current clients B it explained:

> Any offeror selected for this appointment will be precluded from representing any client in any matter against the State of Idaho, its officers, or agencies unless a written waiver is first obtained from the Attorney General.

In response both Kelso and Irwin listed four clients each, all regarding workers' compensation cases.

On August 15, 1995, Kelso was notified that his proposal to represent the ISIF had been approved by the Board of Examiners. On October 27, 1995, Irwin was similarly notified that he had also been selected: On September 29, 1995, Kelso was appointed as a special deputy attorney general to represent the ISIF. Irwin was appointed on October 27, 1995.

Because of the sporadic nature of their legal representation of the ISIF, Kelso and Irwin routinely took private client cases. On January 2, 1996, Kelso and Irwin filed a notice of tort claim of behalf of two private corporations against the SIF.

On February 9, 1996, The Attorney General wrote Kelso and Irwin to inform them that he considered it a conflict of interest to represent the ISIF while representing clients adverse to the SIF. The letter informed Kelso and Irwin that the Attorney General did not intend to grant a waiver to allow the conflict. The letter concluded that Kelso and Irwin would need to choose between continuing as counsel for the ISIF or as counsel for the tort claimants against the SIF. If the latter were chosen, the Attorney General would withdraw Kelso and Irwin's appointments as special deputy attorneys general.

Kelso responded on February 15, 1996. He began by pointing out that his representation of the tort claimants was actually for the benefit of the SIF "in addressing significant problems that have statewide impact." Kelso noted that one of the conflicts listed in his proposal was for a similar case; and he assumed that since he had been appointed, that the Attorney General did not consider it a conflict. Concluding that he did not intend to discontinue representing the tort claimants, Kelso invited the Attorney General to "just FAX, or mail, me a note" to indicate that his appointment as a special deputy attorney general had been terminated.

By letter of February 21, 1996, the Attorney General terminated Kelso and Irwin's appointments. The letter indicated that the reason for the termination was Kelso's insistence on representing the tort claimants against the Idaho SIF.

Kelso and Irwin filed suit against the Attorney General, the State of Idaho, and other unnamed individuals and entities (the defendants) on June 27, 1996. Their complaint alleged violations under the Idaho Protection of Public Employees Act (Idaho Whistleblower Act), 42 U.S.C. § 1983 (civil rights violation), breach of contract, and wrongful discharge. On August 15, 1996, Kelso and Irwin filed an amended complaint which alleged the same violations.

The defendants answered by filing a motion to dismiss the complaint pursuant to I.R.C.P. 12(b)(6), failure to state a claim upon which relief may be granted. Kelso and Irwin responded by filing a motion to convert defendants' 12(b)(6) motion to a motion for summary judgment, which would allow both sides to submit further briefs and memoranda. The district court granted the motion.

On January 28, 1998, the district court entered its memorandum opinion and order on defendants' motion to dismiss defendant's motion for summary judgment. The district court dismissed the § 1983 claims against the State of Idaho and the Attorney General in his official capacity. However, the court determined that there was a material issue of fact as to whether Attorney General Lance's conduct, as an individual, violated Kelso and Irwin's First Amendment rights.

The district court also dismissed Kelso and Irwin's claims of beach of contract because it found that the SIF was a state agency according to Idaho case law. The court further dismissed Kelso and Irwin's wrongful termination claims. Following the district court's decision, the parties entered a stipulation for conditional dismissal and entry of judgment pursuant to I.R.C.P. 41(a)(1). On March 18, 1999, Kelso and Irwin filed a notice of appeal, seeking a review of the district court's grant of summary judgment.

## II.

### STANDARD OF REVIEW

On appeal from the grant of a motion for summary judgment, this Court employs the

same standard as used by the district court originally ruling on the motion. *Scona Inc. v. Green Willow Trust*, 133 Idaho 283, 286, 985 P.2d 1145, 1148 (1999). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court liberally construes all disputed facts in favor of the non-moving party, and draws all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion. *Cook v. State, Dept. of Transp.*, 133 Idaho 288, 294, 985 P.2d 1150, 1156 (1999). If reasonable people could reach different conclusions or draw conflicting inferences from the evidence, the motion must be denied. *Id.* However, if the evidence reveals no disputed issues of material fact, the trial court should grant the motion for summary judgment. *Id.*

## III.

## ANALYSIS

**The State Insurance Fund Is A State Agency For The Purpose Of Evaluating Whether Kelso And Irwin Created A Conflict Of Interest By Filing A Claim Against The SIF While Representing The ISIF.**

Kelso and Irwin argue that the SIF is not a state agency but rather merely a mutual insurance carrier. They assert that since it is not a state agency, they did not breach their contract with the Attorney General by creating a conflict of interest.

Interestingly, both sides and the district court agree that the Idaho case of *State v. Musgrave*, 84 Idaho 77, 370 P.2d 778 (1962), is controlling and dispositive. In *Musgrave*, the issues presented were whether the manager of the SIF could make payments for legal services out of SIF funds without legislative appropriation, and whether anyone other than the Attorney General could represent the SIF in front of the Industrial Accident Board. *Id.* at 80–81, 370 P.2d at 779. As manager of the SIF, Musgrave had made payments from the SIF account to one of the

attorneys who had represented the SIF (Coughlan). *Id.* at 81, 370 P.2d at 780. At the time, the State Insurance Fund manager would sign sight drafts, which were then paid out by the State Treasurer from the rotary fund, which was in turn repaid from the SIF. *Id.* at 83, 370 P.2d at 781. The State Auditor brought suit against Musgrave for making the payments of state funds without an appropriation by the Legislature. *Id.*

In its holding, the Court first determined that Coughlan was an independent contractor of the SIF, rather than an employee. This was because the agreement between Coughlan and Musgrave provided that Coughlan would represent the SIF on matters that were referred to him by Musgrave, and then bill the SIF for the fees generated on each individual case. *Id.* at 81, 370 P.2d at 780.

The Court then went on to define the nature of the SIF as "an agency of the state created for the purpose of carrying on and effectuating a proprietary function as distinguished from a governmental function." *Id.* at 85, 370 P.2d at 782. Furthermore, "It serves a 'public purpose' but not a 'governmental purpose.'" *Id.* The Court then quoted from decisions by several other states with similar funds to show that the money in the SIF is not state money and could be disbursed without legislative appropriation. *Id.*

One of the decisions quoted by the Court was the Minnesota Supreme Court case of *Senske v. Fairmont & Waseca Canning Co.*, 232 Minn. 350, 45 N.W.2d 640 (1951). This Court quoted *Senske* that "it is erroneous to assume that an employee's [sic] claim for total disability benefits from the special fund is in the nature of a claim against the state." *Id.* at 645–46. Kelso and Irwin draw upon this quote to show that their claim against the SIF was not a claim against a state agency nor "in the nature of a claim in which the attorney general had any lawful voice or influence, hence no possible conflict of interest." Appellants' Brief at 20.

Kelso and Irwin fail to consider the rationale for the statement of the Minnesota court or the correct reason for which this Court used the quote. In both of these cases, the

SIF was being attacked as though the money in the fund were state money. Both courts wanted to clarify that the money in the funds was not state money, and thus, not subject to the constitutional requirements of making legislative appropriations to disburse funds. This Court explained that "[t]he state insurance fund, not being state money, and claims against it not being claims against the state, the state board of examiners has no power or jurisdiction over the expenditure or disbursement thereof, except such as is given to it by the legislature." *Musgrave*, 84 Idaho at 90, 370 P.2d at 786.

It is clear from *Musgrave* that the SIF is not considered a state agency for the purpose of determining the ownership of the money it holds. This limited exception from state agency status has been further defined in other cases from this Court.

In *Board of County Commissioners v. Idaho Health Facilities Authority*, 96 Idaho 498, 531 P.2d 588 (1974), this Court was asked to review whether the Health Authority had exceeded constitutional limits. *Id.* at 501, 531 P.2d at 591. It was argued that the Health Authority had been created as a corporation, "in contravention of Article 3 § 19 of the Idaho Constitution," which prohibits the legislature from creating corporations. *Id.* at 505, 531 P.2d at 595.

In establishing a means of differentiating between state agencies and corporations, the Court discussed several examples of both. One of the examples was the SIF as discussed in *Musgrave*. *Id.* at 507, 531 P.2d at 597. In creating a formula for establishing state entities which are not forbidden corporations, the Court stated that "under the doctrine of the *Musgrave* case there are state-created entities which are neither corporations nor state agencies subject to all the restrictions of the state constitution." *Id.*

Kelso and Irwin also rely upon the case of *Idaho Water Resource Board v. Kramer*, 97 Idaho 535, 571, 548 P.2d 35, 71 (1976), wherein this Court relied upon *Musgrave* for the proposition that "disbursement of payments from a state insurance fund ... did not require submission of each claim to the board of examiners." *Id.* However, this again merely points out that the money in the SIF is not state money, subject to review by the Board of Examiners. The decision in this case is not in conflict with this Court's previous holdings that money in the SIF is not state money.

Thus, these cases recognize an entity which is not entirely a corporation, nor a full-fledged state agency. However, of importance is the qualification given to the SIF by the *Idaho Health Authority* case. As noted above, the Court conspicuously identified the SIF as not being a state agency "subject to all the restrictions of the state constitution." *Id.* Thus, we have the interesting result that the SIF is treated as a state agency for some purposes but not for others.

Under the facts presented here, we conclude that the SIF is a state agency, thus creating a conflict of interest for Kelso and Irwin. This conclusion is buttressed by the fact that at the time the conflict arose, the Attorney General's office was responsible for representing both the SIF and the ISIF.

In 1995, Senate Bill 1217 was passed, amending Idaho Code § 67–1401. 1995 Idaho Sess. Laws ch. 141 § 1. This legislation brought the responsibility of legal representation for all state agencies under the control of the Attorney General. I.C. § 67–1401.

The Attorney General's office, however, is not required to provide all of these legal services alone. The legislature provided that the Attorney General may contract for legal representation of state agencies. I.C. § 67–1409. When these contracts for legal services are made, the attorney is appointed as a special deputy attorney general. I.C. § 67–1409. The underlying consequence is that it is still the Attorney General's office which is ultimately responsible for the legal representation of these state agencies.

Therefore, since the office of the Attorney General was responsible for representing both the SIF and the ISIF, we hold that when determining the status of the SIF for a potential conflict of interest pursuant to legal representation, the SIF is a state agency. Kelso and Irwin created a conflict of interest by putting the Attorney General's office on both sides of the litigation—the very thing

the disclaimer in Kelso and Irwin's applications was designed to prevent.

Kelso and Irwin next argue that the SIF is not a state agency because of statements made by some of its administrative personnel. While these statements cannot change the legal nature of the SIF, they are, nevertheless, all in line with the cases from this Court defining the SIF.

None of these comments claim that the SIF is not a state agency; they simply reiterate the holding of *Musgrave* that money in the SIF is not state money. In fact, many of these statements specifically refer to the SIF as a state agency. For example, one stated that the legislature "also established the State Insurance Fund (SIF) as a state agency."

It should also be noted that Kelso and Irwin conceded that the SIF was a state agency when they filed their notice of tort claim under Title 6, Chapter 9 of the Idaho Code. The Idaho Tort Claims Act mandates, in pertinent part, that state agencies cannot be sued without first filing a notice of tort claim. I.C. § 6–905.

The Act defines state as "the state of Idaho or any office, department, agency, authority, commission, board, institution, hospital, college, university or other instrumentality thereof." Kelso and Irwin have not argued that the SIF fits within this definition as anything other than a state agency. It is, therefore, inconsistent for them to file a notice of tort claim against the SIF and then to argue that the SIF is not a state agency for the purpose of a claim against the state.

For these reasons, the decision of the district court, finding that the SIF is a state agency for the purpose of conflicts of interest, is affirmed. Since we have determined that the SIF is a state agency for the purpose of determining that Kelso and Irwin created a conflict of interest, we need not consider Kelso and Irwin's additional claims.

## IV.

## CONCLUSION

For the reasons stated above, we hold that the SIF is a state agency for the purpose of determining that Kelso and Irwin breached their contracts with the Attorney General by filing a notice of tort claim against the SIF. No attorney fees are awarded on appeal, costs are awarded to respondents.

Justices SILAK, SCHROEDER and WALTERS concur.

Chief Justice TROUT, concurring in result.

While I concur in the result reached by the Court's opinion, I cannot join in the Court's analysis of the issue presented in this case. In my view, it is unnecessary for this Court to decide whether the State Insurance Fund is a state agency for the purposes of this case. Rather, I would decide this case under the clear terms of the contract between the Attorney General's office and Kelso and Irwin. Under the express terms of the contract, the Attorney General could terminate Kelso's contract at any time, for any reason. Therefore, it is not necessary for this Court to determine whether a sufficient conflict of interest existed to justify Kelso's termination under the conflicts clause of the contract.

Even if such an analysis were required, I believe a sufficient conflict existed in this case, regardless of the State Insurance Fund's status as a state agency. According to the contract, a representative of the Attorney General's office, such as Kelso and Irwin, is prohibited from suing any entity represented by the Attorney General. While the contract provision names only the State of Idaho, its officers and agencies, the clear import of this provision is that anyone represented by the Attorney General, whether by statute or agreement, cannot be sued by an attorney also acting as a representative of the Attorney General's office. Clearly, in this case, the State Insurance Fund is represented by the Attorney General, whether it is a state agency or not. Under the clear terms of the contract, Kelso cannot sue the State Insurance Fund while also under contract with the Attorney General's office. Therefore, the Attorney General was justified in terminating the contact with Kelso, and there is no reason to address the issue of

whether the State Insurance Fund is a state agency under these circumstances.