79 P.3d 707

STATE of Idaho, ex rel., Dirk KEMPT-
HORNE, Governor; Ben Ysursa, Secre-
tary of State; Lawrence G. Wasden; At-
torney General; Keith Johnson, State
Controller; Dr. Marilyn Howard, Super-
intendent of Public Instruction, as the
State Board of Land Commissioners;
and Winston A. Wiggins, Director, De-
partment of Lands, Plaintiffs–Appel-
lants,

v.

BLAINE COUNTY, Idaho, a political
subdivision of the State of Idaho,
Defendant–Respondent,

and

Heathlands Homeowners' Ass'n., Inc., Val-
ley Club Owners Ass'n., Inc., Starweath-
er Subdivision Property Owners' Ass'n.,
Intervenors–Respondents.

No. 28710.

Supreme Court of Idaho,
Boise, May 2003 Term.

July 23, 2003.

Rehearing Denied Nov. 20, 2003.

Hon. Lawrence G. Wasden, Attorney Gen-
eral; Clive Strong, Deputy Attorney General,
Boise, for appellants. John R. Kormanik,
Deputy Attorney General argued.

Blaine County Prosecutor's Office, Hailey,
for respondent. Jim J. Thomas argued.

Williamson Law Office, Hailey, for interve-
nors. Ned C. Williamson argued.

Jerry D. Mason, Coeur d'Alene, and Wil-
liam L. Herrington, Moscow, for amicus curi-
ae.

WALTERS, Justice.

The State filed a complaint seeking a de-
claratory judgment that school endowment
lands are exempt from local zoning regula-
tions. The district court awarded summary
judgment to Blaine County and the Interve-
nors against the State, subjecting school en-

dowment lands to local zoning laws. We reverse the decision of the district court.

## FACTS AND PROCEDURAL BACKGROUND

The subject of this appeal is a tract of school endowment land located in Blaine County known as the Ohio Gulch parcel. The Idaho State Land Board, which controls and manages school endowment lands, entered into an agreement that continued for many years, allowing the County to operate a landfill on the parcel. The Land Board also authorized the County to sell excess fill for the payment of royalties and at various times permitted third parties to extract and remove sand and gravel from the parcel.

In 1998 and 1999, Gary McStay was conducting extraction and removal of sand and gravel under a lease with the State. In September of 1999, Blaine County served McStay with a Cease and Desist Order, forbidding further extraction and removal of sand and gravel, which activities the County claimed were in violation of zoning laws. The order informed McStay that he should not resume his activities except pursuant to a conditional use permit from the County. The State Department of Lands director became involved and wrote to the County directing that the County remove zoning overlays from endowment lands in Blaine County. The letter also stated that the County was acting beyond its legal authority in requiring McStay to obtain a conditional use permit.

Although McStay did apply for a conditional use permit, his request was denied by the Planning and Zoning Commission. In part, the Commission's findings recognized that a gravel extraction operation on the property was not inconsistent with objectives set forth in the County's comprehensive plan, but stated that a master plan produced in conjunction with the state and after citizen input was necessary to fully understand the competing residential and industrial uses in the area. The decision, which was appealed by McStay, was ultimately affirmed by the Board of County Commissioners.

The State then filed a complaint for declaratory judgment in the district court. The sole issue to be resolved was whether endowment trust lands are subject to or immune from local zoning regulations—a decision that would have far-reaching impact. The State filed a motion for partial summary judgment. Blaine County and Intervenors filed cross-motions for summary judgment. On June 12, 2002, the district court granted summary judgment in favor of the County and the Intervenors. The district court held that school endowment lands are generally subject to state legislation enacted pursuant to the police power; the legislation subjecting the school endowment lands to local zoning ordinances does not violate Article IX, Sections 7 and 8 of the Idaho Constitution; and school endowment lands are subject to the provisions of the Local Land Use Planning Act (LLUPA) and local zoning ordinances enacted thereunder.

On appeal, the State challenges the district court's holding that endowment trust lands are not immune from local zoning regulations. The State argues that the application of zoning laws to endowment trust lands is constitutionally and statutorily prohibited.

## STANDARD OF REVIEW

When an appellate court reviews an order granting summary judgment, it employs the same standard used by the district court originally ruling on the motion. *Kelso v. Lance*, 134 Idaho 373, 374–75, 3 P.3d 51, 52–53 (2000). A summary judgment is properly granted when the moving party shows there is no genuine issue of material fact and is entitled to judgment as a matter of law. I.R.C.P. 56(c). The filing of cross-motions for summary judgment does not establish, of itself, that there is no genuine issue of material fact, especially where the opposing motions seek summary judgment upon different issues or theories. *Garcia v. State Tax Comm'n of State of Idaho*, 136 Idaho 610, 613, 38 P.3d 1266, 1269 (2002).

## DISCUSSION

At issue is the interpretation of Article IX, Sections 7 and 8 of the Idaho Constitution and the Local Land Use Planning Act (LLUPA), specifically I.C. § 67–6528, to determine whether state endowment lands

are exempt from or subject to local zoning ordinances. We note at the outset that generally, the statutory rules of construction apply to the interpretation of constitutional provisions. *Sweeney v. Otter*, 119 Idaho 135, 138, 804 P.2d 308, 311 (1990); *Lewis v. Woodall*, 72 Idaho 16, 18, 236 P.2d 91, 93 (1951); *Higer v. Hansen*, 67 Idaho 45, 52, 170 P.2d 411, 415 (1946). It is also well established that when a case can be decided upon a ground other than a constitutional basis, the Court will not address the constitutional issue unless it is necessary for a determination of the case. *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 710, 791 P.2d 1285, 1289 (1990). We begin, therefore, with an analysis of the relevant statutes enacted by the legislature, which we assume did not overlook the provisions of the constitution in designing the legislation. *See Johnson v. Diefendorf*, 56 Idaho 620, 625, 57 P.2d 1068, 1073 (1936), *quoting Grice v. Clearwater Timber Co.*, 20 Idaho 70, 117 P. 112 (1911). *See also Idaho State AFL–CIO v. Leroy*, 110 Idaho 691, 698, 718 P.2d 1129, 1136 (1986)(holding that in the absence of a legislative invasion of constitutionally-protected rights, the judicial branch of government must respect and defer to the legislature's exclusive policy decisions).

The statute provides in part that "[t]he state and all its agencies, boards, departments, institutions, and local special purpose districts, shall comply with all plans and ordinances adopted under this chapter unless otherwise provided by law." I.C. § 67–6528. The State interprets the final phrase, "unless otherwise provided by law" as creating an exemption for the Land Board, to whom exclusive management and control of school endowment lands have been given, pursuant

to the state constitution. The County disputes the State's interpretation, arguing that the legislature could have expressly exempted the Land Board had it so intended, in the same way it excused the transportation board and public utilities from compliance.[1]

Article IX, § 7, of the Idaho Constitution establishes the state board of land commissioners "who shall have the direction, control and disposition of the public lands of the state; under such regulations as may be prescribed by law." Article IX, § 8, of the Idaho Constitution defines the duty of the board of land commissioners "to provide for the location, protection, sale or rental of all lands ... under such regulations as may be prescribed by law, and in such manner as will secure the maximum long-term financial return to the institution...." The constitutional duty of the Board has been held to be self-executing, that is, the Board may adopt appropriate procedures to carry out its constitutional duties, if the legislature has not specified the procedure. *Allen v. Smylie*, 92 Idaho 846, 452 P.2d 343 (1969).

The legislature enacted Title 58, Idaho Code, which governs the control of the public lands of the state, through the administration of the Department of Lands. I.C. § 58–101 *et seq.* Pursuant to I.C. § 58–132, the state board of land commissioners has been entrusted with the duty to determine the best use or uses to be made of state land, in order to carry out the constitutional mandate of Section 8, Article IX, to secure from the endowment trust lands the maximum long-term financial return. Chapter 3 of Title 58 provides a procedure for appraisement, lease

---

1. I.C. § 67–6528 provides: The state of Idaho, and all its agencies, boards, departments, institutions, and local special purpose districts, shall comply with all plans and ordinances adopted under this chapter unless otherwise provided by law. In adoption and implementation of the plan and ordinances, the governing board or commission shall take into account the plans and needs of the state of Idaho and all agencies, boards, departments, institutions, and local special purpose districts. The provisions of plans and ordinances enacted pursuant to this chapter shall not apply to transportation systems of statewide importance as may be determined by the Idaho transportation board. The Idaho transportation board shall consult with the local agen-

cies affected specifically on site plans and design of transportation systems within local jurisdictions. If a public utility has been ordered or permitted by specific order, pursuant to title 61, Idaho Code, to do or refrain from doing an act by the public utilities commission, any action or order of a governmental agency pursuant to titles 31, 50, or 67, Idaho Code, in conflict with said public utilities commission order, shall be insofar as it is in conflict, null and void if prior to entering said order, the public utilities commission has given the affected governmental agency an opportunity to appear before or consult with the public utilities commission with respect to such conflict.

application and renewal, and the sale of lands, referring to specifically named parcels of endowment lands.

The Ohio Gulch parcel, containing 640 acres, more or less, and located some five miles north of Hailey, Idaho, is the subject of this appeal. *See* Idaho Code § 58–307(4)(a). The parcel is state public school endowment land which, notwithstanding any other provision of law,

> may be leased for commercial purposes, for a term not to exceed ten (10) years, and the board may grant, upon payment of good and valuable consideration, a preferential right to renew said lease not more than four (4) times, provided that the board shall consult with the county commissioners of the county in which the lands are located before leasing the lands described below, and the use for which the land is leased shall be consistent with the local planning and zoning ordinances insofar as reasonable and practicable.

I.C. § 58–307(4). The statute, therefore, limits the term of the leases in time and "for commercial purposes," and provides for consultation with the county insofar as is reasonable. The added requirement that the lease not be in conflict with local planning and zoning ordinances also applies only to leases for "commercial purposes," which are defined as follows:

> The term "commercial purposes" means industrial enterprises, retail sales outlets, business and professional office buildings, hospitality enterprises, commercial recreational activities, multifamily residential developments and other similar businesses. For purposes of this section, agricultural leases, grazing leases, oil and gas leases, mineral leases, geothermal leases and single family, recreational cottage site and homesite leases are not considered leases for commercial purposes.

I.C. § 58–307(5). Clearly, the statutory definition does not include mining leases and thus does not subject to local planning and zoning ordinances the gravel extraction process the Land Board intended to enter into with McStay.

We note that the language of I.C. § 58–307(3) is nearly identical to I.C. § 58–307(4).

Both sections deal with leases of endowment lands for commercial purposes, which put those uses of endowment land within the purview of the local planning and zoning ordinances. Sections 3 and 4 show clearly the intent of the legislature to subject only leases for commercial purposes to consultation with the county commissioners and the application of zoning restrictions, which have not been made generally applicable to all leases of state endowment lands. *See* I.C. §§ 58–307(1), (2).

We conclude that the provisions of I.C. § 58–307 operate to exempt the Land Board from compliance with LLUPA, thus resolving the conflict between the Blaine County zoning ordinance and the Land Board's constitutionally-mandated authority and control over endowment lands. Because a careful examination of the statutory scheme compels a conclusion that mineral leases on endowment lands are immune from local zoning regulations, we reject the district court's resort to out-of-state case law leading to a holding that the management of school endowment lands is generally subject to reasonable legislation enacted pursuant to the police power, such as the Local Planning Act of 1975. Accordingly, we reverse the decision of the district court providing for the application of zoning regulations to endowment lands managed by the Land Board.

## CONCLUSION

Judgment in favor of Blaine County and the Intervenors is hereby reversed. Although the Intervenors–Respondents requested an award for attorney fees on appeal under I.C. § 12–117, they are not the prevailing parties nor did the State act without a reasonable basis in fact or law in pursuing this appeal, so as to meet the standard for an award of fees under I.C. § 12–117. Costs are awarded to the State. No attorney fees awarded.

Chief Justice TROUT and Justices KIDWELL and EISMANN, concur.

Justice SCHROEDER, dissenting.

I respectfully dissent from the conclusion of the Court that the statutory scheme im-

352

munizes mineral leases on endowment lands from local zoning regulations. Idaho Code Section 67–6528 of the Local Land Use Planning Act provides that the State of Idaho "shall comply with all plans and ordinances adopted under this chapter unless otherwise provided by law." Section 67–6528 then specifically exempts "transportation systems of statewide importance as may be determined by the Idaho transportation board" and certain actions of the public utilities commission. The legislature clearly expressed the exemptions from the Local Land Use Planning Act. Endowment lands are not immunized from the reach of regulations adopted pursuant to the Local Land Use Planning Act as are certain acts of the Idaho transportation board and the Idaho public utilities commission. The statutory scheme for the management of the endowment lands does not expressly exempt those lands from the local zoning ordinances adopted pursuant to the Local Land Use Planning Act. Consequently, the Court should determine that the mineral leases on the endowment lands in issue in this case are subject to the local zoning ordinances unless there is a constitutional mandate for the management of the endowment lands that trumps the local ordinances or that the county has acted beyond the scope of its authority.